JEFF D. FRIEDMAN (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

STEVE W. BERMAN (*pro hac vice* to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

CHRISTOPHER R. PITOUN (290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone:  (213) 330-7150
Facsimile:  (213) 330-7152
christopherp@hbsslaw.com

*Attorneys for Plaintiff and the Proposed Class*

[*Additional counsel on signature page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS PALMER, Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California Corporation,<br><br>Defendant. | No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF CALIFORNIA CONSUMER PROTECTION LAWS**<br><br>DEMAND FOR JURY TRIAL |

# TABLE OF CONTENTS

**Page**

I.      OVERVIEW ....................................................................................................1

II.     PARTIES ........................................................................................................4

III.    FACTUAL ALLEGATIONS ..........................................................................5

      A.      Apple Releases the iPhone 5 and the iOS 6 Operating System...................5

      B.      Apple Releases the iPhone 5 in the Midst of Fierce Competition from Samsung. .....7

      C.      Partially In Response to Products Like the iPhone, AT&T Ends Unlimited Data Plans and Moves Subscribers to Tiered Data Plans ............................................................8

      D.      Users Report Explosions in their Data Usage. .........................................10

      E.      While Failing to Disclose the Defect's Existence, Apple Repairs the Defect for Verizon Subscribers.............................................................................12

      F.      Despite Indications of a Repair, the Problem Persists for AT&T Subscribers Through the Release of iOS 7 and iPhone 5s ..............................................................16

IV.     CLASS ACTION ALLEGATIONS .............................................................18

V.      CAUSES OF ACTION..................................................................................20

FIRST CAUSE OF ACTION VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW  (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)....................................................20

SECOND CAUSE OF ACTION VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*)....................................................23

THIRD CAUSE OF ACTION  VIOLATIONS OF THE FALSE ADVERTSING LAW  (CAL. BUS. & PROF CODE §§ 17500, *ET SEQ.*)....................................................26

PRAYER FOR RELIEF...................................................................................28

JURY TRIAL DEMAND.................................................................................28

Plaintiff Thomas Palmer brings this action on behalf of himself and all others similarly situated ("Plaintiff") against Apple, Inc. ("Apple" or "Defendant").  Plaintiff's allegations against Defendant are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon each Plaintiff's personal knowledge.

## I.      OVERVIEW

1.      Consumers who pay a premium for Apple's newest and most sophisticated iPhones can reasonably expect that their iPhone will include the most sophisticated hardware.  Correspondingly, consumers can also expect that their iPhone will include the sophisticated software necessary to operate this new generation of hardware.  But when a defect in Apple's software precludes the hardware from operating properly, consumers are deprived of the full benefit of their iPhones.  This is especially true when the defect causes the consumer to use vast quantities of costly cellular data without their knowledge.  In such circumstances, Apple should act quickly to provide a technical fix as soon as it learns about the issue.  When Apple fails to repair or even disclose the defect for a period of years, consumers are left holding the bag to work out the mess with their wireless carriers.  This is wrong and Apple should be required to make restitution to its users.

2.      From 2010 to 2012, Apple was competing fiercely with Samsung in the mobile device market.  Samsung had overtaken Apple as leader in mobile device sales and Apple was looking to catch up.[1]  Apple's next iPhone had to make a big splash to win back market share from Samsung's Android.  Apple was under heavy pressure to deliver a revolutionary product.

3.      In September, 2012, Apple released the iPhone 5: its answer to Samsung's Android challenge.  The iPhone 5 included the brand new A6 chip.  The A6 chip was novel in two ways.  First, it included a dual-core central processing unit ("CPU") called Swift (the "Swift CPU") that was responsible for basic operating system and app program execution and thus the major functionality of the phone.  The Swift CPU was an improved version of the dual-core CPU from prior generations of

---

[1] Ingrid Lunden, *Apple's iPhone Overtakes Android In US Sales for the First Time Since* 2012, Techcrunch.com (Feb. 4, 2015) http://techcrunch.com/2015/02/04/apples-iphone-overtakes-android-in-us-sales-for-the-first-time-since-2012/ (last visited Dec. 1, 2015).

COMPLAINT                                    - 1 -
Case No.:
010559-11  829086 V1

iPhones.  Apple presented the A6 as offering combined CPU and graphics speeds that were roughly twice as fast as its predecessor.[2]  Apple also presented the iPhone 5 as offering its users the ability to stream data through Wi-Fi or via LTE: each at much faster speeds than prior iPhones.[3]   Second, the A6 also contained a brand new tri-core graphics processing unit (GPU).  GPU's are electronic circuits specially designed to convert data into images, animations, and graphics.  The iPhone 5's powerful new GPU was much faster and more efficient at processing large blocks of audio and video data compared to GPU's in previous iPhones.  As a result, iPhone 5 users could enjoy a significantly enhanced video streaming experience including shorter buffering times and improved screen resolution.

4.     The iPhone 5 included the new iOS 6 operating system.  While iOS 6 included a number of key features immediately visible to the user, iOS 6 was also responsible for supporting the iPhone 5's hardware, including its powerful A6 processor.  "Perhaps one of the most important features of iPhone is the software it runs.  And [Apple had] iOS 6 – the latest version of the world's most advanced operating system."[4]

5.     Indeed, Apple presented the iPhone 5 as a product that would revolutionize the user experience for mobile devices: delivering lightening fast internet and video over Wi-Fi or LTE, hundreds of new apps, a wider screen, and all inside a thinner phone.

6.     But soon after the iPhone 5's release, consumers began noticing a pattern that Apple had not advertised when it introduced the iPhone 5.  Despite being connected to Wi-Fi signals, iPhone 5 purchasers experienced massive surges in the amount of cellular data they were using each month.  Because most cellular plans, at that time, only allowed consumers a limited amount of data each month for a set price and charged more for any data overages, consumers, who were typically monitoring their usage to avoid overages, began to routinely exceed their data limits and incur hefty

---

[2] Youtube.com, Apple Special Event 2012- iPhone Introduction
https://www.youtube.com/watch?v=82dwZYw2M00 at 12:00 min (last visited Nov. 19, 2015)

[3] Youtube.com, Apple Special Event 2012- iPhone Introduction
https://www.youtube.com/watch?v=82dwZYw2M00 at 10:00 min (last visited Nov. 19, 2015).

[4] Youtube.com, Apple iOS 6 Presentation!!! September 12, 2012)
https://www.youtube.com/watch?v=GkSj7LSpADc at 00:00 min (last visited Nov. 19, 2015.

data fees as a result.  Many felt compelled to increase their monthly subscription data plan limits in order to avoid the costly additional and unpredictable penalty charges.

7.      What consumers were experiencing was the result of a defect in how iOS 6 interacted with the iPhone 5's hardware (the "Defect").  In previous generations of iPhones, streaming audio-video decompression, decoding, and presentation to the display was handled by less powerful GPU's and required assistance for the CPU.  In the iPhone 5, when a consumer streamed high volumes of data for a period even as short as a couple of minutes, the GPU would take over all video decompression, decoding, and presentation to the display.  As a result, the Swift CPU no longer played a role in the video decompression, decoding, and presentation process, the Swift CPU would go into sleep mode to conserve battery life.  Once the Swift CPU was asleep, the iPhone 5's operating system would automatically trigger the Wi-Fi connection to end and the phone would switch from streaming data via a Wi-Fi signal to streaming data via a cellular signal.  The iOS 6 should not have disabled the Wi-Fi when the Swift CPU went to sleep and consumers should not have incurred data usage charges as they should have been able to continue streaming their data via Wi-Fi.  Because the phones switched to cellular connections instead of Wi-Fi, consumers unwittingly and unknowingly used excessive amounts of cellular data without any warning or notice from Apple.

8.      Apple became aware of this issue almost immediately.  Consumers contacted Apple and their carriers, and they began commenting on Apple's own Internet message boards asking whether other consumers were experiencing the same phenomena.  Various news outlets also began taking notice of the issue.  Within days, Apple, without admitting that any defect existed, provided a repair for the Defect for iPhone 5 owners on the Verizon network.  Inexplicably however, Apple did not repair the defect for iPhone 5 consumers who were subscribers to the AT&T Mobility ("AT&T") network.  In fact, while Apple provided a repair to the Defect within *two weeks* to iPhone 5 owners on the Verizon network, iPhone 5 and 5s owners on the AT&T network had to wait over *two years* for a repair.  Despite multiple updates to iOS and even new hardware in subsequent generations of the iPhone, Apple did not fix or even disclose the Defect to AT&T's iPhone 5, 5S,5C and iPhone 6 and 6 plus owners.  As a result, the Defect affected all versions iOS 6 and 7 and was only resolved with the release of iOS 8.1 in October 2014.   Through this entire time period, Apple materially

COMPLAINT                                              - 3 -
Case No.:
010559-11  829086 V1

1    omitted and failed to disclose the Defect to consumers.  By omitting this material information,

2    Consumers were charged hefty fees for data they did not intend to use and had sought not to use,

3    because they had initiated the connections through their Wi-Fi networks to avoid such charges.

4    Apple's non-disclosure also deprived consumers of the opportunity to make an informed choice-

5    especially given the stiff competition from Samsung-as to whether an iPhone was the right mobile

6    device for them which did not have this issue.

7            9.     As discussed more fully below, Apple's omissions regarding the Defect violates

8    (i) California's Business & Professions Code §§ 17200, *et seq.* (the Unfair Competition Law or

9    "UCL"); (ii) California Civil Code §§ 1750, *et seq.* (the Consumers Legal Remedies Act or

10   "CLRA"); and (iii) California's Business & Professions Code §§  17500, *et seq.* (the False

11   Advertising Law or "FAL").

12                         **II.**       **PARTIES**

13           10.     Plaintiff Thomas Palmer is a citizen of the State of California, residing in Aptos.

14   Plaintiff is an AT&T wireless customer who purchased an iPhone 5 in May, 2013 and an iPhone 5s

15   in June 2014 both from the AT&T Wireless store located in Capitola, California.  Plaintiff Palmer

16   saw the advertisements and statements which were material to his decision to purchase.  Plaintiff

17   Palmer's iPhone and iPhone 5s were used to stream video via YouTube, snapchat, and Netflix in

18   areas with Wi-Fi. Plaintiff would not have purchased an iPhone 5 or 5s nor paid as much had these

19   advertisements disclosed the truth regarding the Defect.

20           11.     Defendant Apple is a designer, developer, and retailer of computer software, online

21   services, and consumer electronics including the iPhone.  Apple markets and designs the iOS

22   operating system for its mobile devices.  All versions of iOS 6 and iOS 7 contained the Defect.  iOS

23   8.0 also contained the Defect.  In addition to AT&T versions of the iPhone 5, the iPhone 5s and

24   iPhone 5c ran on iOS which contained the defect, (collectively "Apple Devices").  Apple is a

25   corporation domiciled in the State of California, with its principal place of business located at 1

26   Infinite Loop, Cupertino, California.

27                   **I.**       **JURISDICTION AND VENUE**

28

12.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act of 2005, pursuant to 28 U.S.C. § 1332(d) because the amount in controversy for the Class exceeds $5,000,000, exclusive of interest and costs.  Also, given that Apple markets and sells its products nationwide, the Class includes members who are citizens of a different state than Defendant.

13.     This Court has personal jurisdiction over the Defendant because the Defendant is headquartered in California and conducts substantial business in this district and throughout the State of California.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendant, as a corporation, is "deemed to reside in any judicial district in which [it is] subject to personal jurisdiction" and because the misrepresentations and material omissions "giving rise to claim[s] occurred" have been committed in this federal judicial district, and the defendant resides and regularly conducts business in this district.

15.     Intradistrict Assignment: Assignment to the San Jose division of the Court is proper pursuant to Northern District of California Local Rule 3-2(d) because a substantial part of the events giving rise to the claims arose in this District.

### III.     FACTUAL ALLEGATIONS

**A.     Apple Releases the iPhone 5 and the iOS 6 Operating System.**

16.     Since the first Apple iPhone was released in 2007, Apple has achieved unparalleled success in creating a product with a strong global following.  With each subsequent generation of iPhone, consumers have been impressed by yet another technological breakthrough that revolutionizes the market for mobile devices.  As a result, consumers rely on Apple's representations on how its devices will operate and what to do if there is flaw in the product.

17.     Since introducing the iPhone, Apple has prospered.  Before the introduction of the iPhone 5, Apple had taken in over $50 billion in revenue from iPhone sales.[5]  As of March, 2015, it

---

[5] Seth Fiegerman, *Apple and Samsung Just Revealed Their Exact U.S. Sales Figures For the First Time Ever*, Businessinsider.com (Aug. 10, 2012) http://www.businessinsider.com/apple-and-samsung-just-revealed-their-exact-us-sales-figures-for-the-first-ever-time-2012-8 (last visited Nov. 20, 2015).

is estimated that 94 million iPhones were being used in the United States.[6]  That breaks down to approximately one phone for every three people living in the United States.  Its stock price has more than quintupled from less than $19.00 per share to over $109.00 per share and Apple has become the world's most valuable company by market capitalization.[7]

18.    In September 2012, Apple announced the release of the iPhone 5 to a full house at San Francisco's Yerba Buena Center for the Arts.  As the next generation in the iPhone line, the iPhone 5 represented the culmination of years of research and development.  Thinner, lighter, faster, and more powerful that any previous iPhone, Apple's senior vice president for worldwide marketing, Phil Schiller touted the iPhone 5 as being a significant advancement in almost every way over its predecessor, the iPhone 4S and described the iPhone 5 as "the most beautiful product we have ever created-bar none."[8]

19.    Beyond its external aesthetic appeal, the iPhone 5 was entirely new on the inside.  The iPhone 5 featured brand new hardware including the new A6 chip.  The A6 chip was novel in two primary ways.  First, it included the new Swift CPU.  This CPU, responsible for the basic functionality of the phone, was an improved version of the CPU over prior generations of iPhones.  Second, the A6 contained a brand new tri-core GPU.  GPU's are electronic circuits specially designed to convert data into images, animations, and graphics.  The iPhone 5's powerful new GPU was more efficient at processing large blocks of visual data compared to GPU's in previous iPhones.  As a result, iPhone 5 users could enjoy a significantly enhanced video streaming experience including shorter buffering times and improved resolution.  These performance improvements were all achieved with a chip that was 22% smaller than its predecessor.

---

[6] Don Reisinger, *iPhones in use in the US Rise to 94m new study suggests*, CNET.com (May 15, 2015) http://www.cnet.com/news/nearly-100m-iphones-in-use-in-the-us-new-study-shows/ (last visited Nov. 18, 2015).

[7] As of the drafting this complaint, Apple was trading at $109.93 per share. http://finance.yahoo.com/echarts?s=AAPL+Interactive#{"range":"10y","allowChartStacking":true} (last visited Dec. 17, 2015).

[8] Youtube.com, Apple Special Event 2012- iPhone Introduction, https://www.youtube.com/watch?v=82dwZYw2M00 at 2:00 (last Visited Nov. 23, 2015).

20.    The iPhone 5 was also the first iPhone to support both DC-HSDPA and LTE ultrafast cellular standards.  This feature allowed consumers to download data at rates up to 100 Mbps over a cellular network.[9]  In the United States, Apple partnered with AT&T, Sprint, and Verizon to support ultra-fast LTE data service for their subscribers.[10]

21.    Beyond the introduction to LTE, the iPhone 5 also came with higher performing Wi-Fi connections which allowed users to download data at rates as fast as 150 Mbps.[11]

22.    Indeed, Apple presented the iPhone 5 as a product that would revolutionize the user experience for mobile devices, delivering lightening fast internet and video over Wi-Fi or LTE, hundreds of new apps, a wider screen, all within a thinner phone.

23.    And the driving force inside the iPhone 5 was the new iOS 6 operating system.  As Phil Schiller of Apple put it, "[p]erhaps one of the most important features of iPhone is the software it runs. And we have iOS 6 – the latest version of the world's most advanced operating system."[12] While iOS 6 included was reported to include over 200 new features including Apple Maps, iOS 6 was also responsible for operating the iPhone 5's hardware, including its powerful A6 processor.[13]

**B.    Apple Releases the iPhone 5 in the Midst of Fierce Competition from Samsung.**

24.    Despite the numerous changes from the prior version of iOS, Apple launched iOS 6 with the quickest development turnaround time of any of its operating systems up to that time.[14] While Apple tested seven beta versions of iOS 5 over a four-month period, iOS 6 was released in just over three months after testing only four beta versions.

---

[9] Youtube.com, Apple Special Event 2012- iPhone Introduction https://www.youtube.com/watch?v=82dwZYw2M00 at 8:50 min (last visited Nov. 23, 2015).

[10] Youtube.com, Apple Special Event 2012- iPhone Introduction https://www.youtube.com/watch?v=82dwZYw2M00 at 10:17 min (last visited Nov. 23, 2015).

[11] Youtube.com, Apple Special Event 2012- iPhone Introduction https://www.youtube.com/watch?v=82dwZYw2M00 at 11:25 min (last visited Nov. 23, 2015).

[12] Youtube.com, Apple iOS 6 Presentation!!! September 12, 2012, https://www.youtube.com/watch?v=GkSj7LSpADc at 00:00 min (last visited Nov. 19, 2015).

[13] Apple.com, Apple Introduces iPhone 5, http://www.apple.com/pr/library/2012/09/12Apple-Introduces-iPhone-5.html (last visited Nov. 23, 2015).

[14] Donna Tam Apple's iOS 6 release date: Start your downloads on Sept. 19 CNET.COM (Sept. 12, 2015) http://www.cnet.com/news/apples-ios-6-release-date-start-your-downloads-on-sept-19/ (last visited Nov. 19, 2015).

COMPLAINT                                    - 7 -
Case No.:
010559-11  829086 V1

25.     Apple was at least partially motivated to speed the release of the iPhone 5 by its fierce ongoing battle with competitor Samsung.  Samsung's mobile devices operated using Google's Android operating system.  Despite Apple's head start in the smartphone market, by late 2011, 43.7% of U.S. smartphone subscribers had an Android device while 27.7% had an iPhone.[15] Nonetheless, the iPhone was substantially more profitable compared to any other smartphone system.[16]

26.     At stake was control of a multibillion dollar smartphone market that was in a period of hypergrowth.  Given that the smartphone industry did not exist ten years earlier, the stakes could not have been higher.

27.     The fight for market dominance continued with no end in sight.  The competition was so intense and the stakes were so high that the iPhone 5 and iOS 6 had to be flawless.  Knowing that disclosing a major defect that made the phones uncompetitive would erode the sales of the marquee iPhone 5 and cause users to distrust iOS 6, which Apple was inserting into all of its new mobile products, Apple refused to publicly admit that the new phones were fundamentally flawed.

**C.      Partially In Response to Products Like the iPhone, AT&T Ends Unlimited Data Plans and Moves Subscribers to Tiered Data Plans**

28.     AT&T's service plans enable its subscribers to, among other things, access the Internet over AT&T's mobile data network.  Accessing the Internet for uses such as email and simple web browsing requires comparatively little data to be transmitted across AT&T's network, while uses such as GPS navigation, streaming high-definition video, and uploading and downloading large files consume considerably more network resources.

29.     Initially, mobile data was used almost exclusively for email and basic web browsing. Because these transmissions required minimal network resources, data quantity was rarely a concern. Accordingly, AT&T and its competitor carriers did not generally sell data services using a "tiered" approach.  (*i.e.*, a variety of plans offering limited quantities of data at different price points, with

---

[15] Harry McCracken, *Ios v. Android: Lots of Stats, Little Clarity*, Cnet.com (Nov. 14, 2011) http://www.cnet.com/news/ios-vs-android-lots-of-stats-little-clarity/ (last visited Dec. 1, 2015).

[16] Harry McCracken, *Ios v. Android: Lots of Stats, Little Clarity*, Cnet.com (Nov. 14, 2011) http://www.cnet.com/news/ios-vs-android-lots-of-stats-little-clarity/ (last visited Dec. 1, 2015)

COMPLAINT
Case No.:
010559-11 829086 V1

- 8 -

additional data available for sale as needed).[17]  Instead, the industry standard during these earlier years was to offer "unlimited" data access for a fixed monthly price.[18]  This was the type of "data plan" that AT&T offered in 2007 when Apple introduced the iPhone.[19]

30.     With the introduction of the iPhone 3G in 2008, there was a fundamental revolution in the capabilities of mobile phones which vastly increased the volume of data transmitted over wireless networks.  This revolution caused data usage on AT&T's network to skyrocket.  Between 2007 and 2011, data traffic on AT&T's network increased *20,000 percent* (and still rising).[20]

31.     In June 2010, AT&T discontinued its Unlimited Data Plan for new subscribers.  Since June 2010, AT&T has offered new subscribers tiered data plans, in which subscribers select from plans offering different data allowances at different price points.[21]  Under tiered plans, once usage exceeds the set allowance, additional data is provided as needed for an additional overage fee.[22]  Although AT&T discontinued the Unlimited Data Plan for new subscribers, it grandfathered many existing Unlimited Data Plan subscribers allowing them to retain their fixed-price plan.[23]  In January, 2012, while AT&T raised the cost of its least expensive data plans, AT&T also raised the data limits included in their plans.[24]  Thus, while an AT&T subscriber was more likely to feel the financial

---

[17] Brief for the Appellant at 6, *Federal Trade Commission v. AT&T Mobility LLC*, No. 15-16585 (9th Cir. Nov. 18, 2015).

[18] Brief for the Appellant at 6, *Federal Trade Commission v. AT&T Mobility LLC*, No. 15-16585 (9th Cir. Nov. 18, 2015).

[19] Brief for the Appellant at 6, *Federal Trade Commission v. AT&T Mobility LLC*, No. 15-16585 (9th Cir. Nov. 18, 2015).

[20] Brief for the Appellant at 8, *Federal Trade Commission v. AT&T Mobility LLC*, No. 15-16585 (9th Cir. Nov. 18, 2015).

[21] Brief for the Appellant at 9, *Federal Trade Commission v. AT&T Mobility LLC*, No. 15-16585 (9th Cir. Nov. 18, 2015).

[22] Brief for the Appellant at 9, *Federal Trade Commission v. AT&T Mobility LLC*, No. 15-16585 (9th Cir. Nov. 18, 2015).

[23] Brief for the Appellant at 9-10, *Federal Trade Commission v. AT&T Mobility LLC*, No. 15-16585 (9th Cir. Nov. 18, 2015).

[24] Brian X. Chen, *AT&T Raises Data Prices for New Smartphone Customers*, New York Times:Bits, (Jan. 19, 2012). http://bits.blogs.nytimes.com/2012/01/19/att-data-plans/ (last visited Nov. 20, 2015).

COMPLAINT                                    - 9 -
Case No.:
010559-11  829086 V1

1    pinch of a higher data bill each month,[25] most AT&T plans permitted subscribers to use more data

2    before exceeding their limits and incurring overage fees.[26]

3         32.    By July, 2012, AT&T reported that 27 million of AT&T's smartphone subscribers

4    were now on tiered pricing plans.[27]  In that same time period, AT&T indicated that 22% of

5    customers purchasing iPhones were new AT&T subscribers making the iPhone a key product for

6    AT&T to increase its market share.[28]

7    **D.    Users Report Explosions in their Data Usage.**

8         33.    Within days of the iPhone 5's release, reports began to emerge that iOS 6 devices

9    were consuming large amounts of cellular data compared to devices running iOS 5.

10        34.    A thread on Apple Support Communities titled "The iPhone 5 uses Cellular Data

11   Over Wi-Fi?" had generated hundreds of user comments before the end of September 2012.  The

12   opening thread from a Verizon subscriber noted:

13        **DJPlayedYA** Sep 24, 2012 1:47 PM
         The first two days after I received my iPhone 5, I racked up 400MB of Cellular
14        Data.  99% of the time I was using my phone, I was connected over WiFi.  So I
         ran a test on my own by watching a YouTube video over WiFiand then looking at
15        my Cellular Data under the Usage menu.  Sure enough, it had went up by around
         10MB.  I called into Apple Support and asked them what was going on.  They
16        thought that it might have been a problem with my phone or my house's WiFi
         connection.  After them walking me through a series of test and restores, the lady
17        semi-acknowledged that it could be a problem with how their phone interacts with
         the new LTE network.
18

19        If you guys out there could keep an eye on your Cellular Usage Data, that would
         be great.  Maybe it's a problem with my iPhone 5, or maybe it's a much larger
20        problem.  Seeing as I used to have unlimited data with Verizon, being charged
21

22        [25] Matt Neuberg, *Mysterious Ios 6 Cellular Data Usage: A Deeper Look.* tidBITS.com (Oct. 24,
     2012) http://tidbits.com/article/13354 (last visited Nov. 19, 2015).
23
          [26] Brian X. Chen, *AT&T Raises Data Prices for New Smartphone Customers*, New York Times:
24   Bits (Jan. 19, 2012). http://bits.blogs.nytimes.com/2012/01/19/att-data-plans/ (last visited Nov. 20,
     2015).
25
          [27] Brian X. Chen, *AT&T Posts Higher Profit and Holds On to Its Subscribers,* New York Times
26   (July 24, 2012) http://www.nytimes.com/2012/07/25/technology/att-posts-higher-profits.html?_r=0
     (last visited Nov. 20, 2015).
27
          [28] Brian X. Chen, *AT&T Posts Higher Profit and Holds On to Its Subscribers,* New York Times
28   (July 24, 2012) http://www.nytimes.com/2012/07/25/technology/att-posts-higher-profits.html?_r=0
     (last visited Nov. 20, 2015).

COMPLAINT                                    - 10 -
Case No.:
010559-11  829086 V1

with everything above 2GB would be very costly for me...especially when it's not even my fault.[29]

35.    Other consumers posted comments on the same thread noting the same issues.

**Zmeyerz**Sep 24, 2012 11:11 PM
Re: The iPhone 5 uses Cellular Data over WiFi?in response to DJPlayedYA
I have seen the same issue on the two iPhones 5's I have.  I agree with the spotty wifi connection theory.  The phones don't seem to stay connected to wifi. So when it drops the wifi connection LTE takes over and racks up the cell data consumption.  I work from home on wifi all day and my first full day of work after getting my new phone it used 30mb.  It should have used 0 for this time period.  I just upgraded from the iPhone 4 and this want not an issue.  Apple there is an issue please fix it!!![30]

**John Capra**Sep 27, 2012 2:15 PM
Re: The iPhone 5 uses Cellular Data over WiFi?in response to Zmeyerz
I a on ATT with an iphone 5 and my cellular data since 9/21 is 3.3gb, tons more than ive ever used in my life and with no explanation.  My theory is that there was a feature in an ios6 beta called "Wifi + Cellular Data" where the wifi signal was still always supported by cellular if the wifi signal weakened.  It doesnt look like the feature made it to the final IOS 6 build but i think that there are pieces of the code that havent been properly cleaned up and are being activated.  This is either being exacerbated by the wifi issues or causing them IMO.[31]

**Lawrence Finch**Sep 28, 2012 12:09 PM
Re: The iPhone 5 uses Cellular Data over WiFi?in response to seven8nine
On any iPhone W-Fiis turned off when the phone is asleep (when the screen is off), so any background apps will use cellular data, unless the phone is plugged in to power.[32]

**Lazykins**Sep 28, 2012 7:45 PM
Re: The iPhone 5 uses Cellular Data over WiFi?in response to Gamtu
Gamtu, you could keep your phone plugged in at night. If your phone is asleep, it will revert to cellular data unless plugged in. The tech guy guy suggested to me that some functions of the phone use the cellular data if they don't like the quality of the wifi. If there are hiccups in your wifi connection, they can, for example, finish a large download using cellular data. He also hinted that not everything is

---

[29] Discussions.Apple,com, The iPhone 5 uses Cellular Data Over Wifi?, https://discussions.apple.com/thread/4348072?start=0&tstart=0 (last visited Nov. 30, 2015).

[30] Discussions.Apple,com, The iPhone 5 uses Cellular Data Over Wifi?, https://discussions.apple.com/thread/4348072?start=0&tstart=0 (last visited Nov. 30, 2015).

[31] Discussions.Apple,com, The iPhone 5 uses Cellular Data Over Wifi?, https://discussions.apple.com/thread/4348072?start=15&tstart=0 (last visited Nov. 30, 2015).

[32] Discussions.Apple,com, The iPhone 5 uses Cellular Data Over Wifi?, https://discussions.apple.com/thread/4348072?start=30&tstart=0 (last visited Nov. 30, 2015).

ceased by turning cellular data off. I have not seen any evidence of that yet. When I turn it off, I see no usage, even overnight.[33]

36.     On September 29, 2012, TidBITS.com, an Apple-dedicated news site reported numerous tweets on Twitter complaining about data usage over cellular networks after installing iOS 6 or acquiring an iPhone 5.[34]  One tweeter indicated that he had contacted AT&T regarding the issue and that the AT&T representative recommended that he turn off cellular data when his phone is in idle mode i.e. standby.[35]  While AT&T's proposal may have been expedient, it was not a real solution since it did not address the reasonable consumer's expectation that Apple's newest operating system could properly manage cellular data usage in a Wi-Fi area.[36]  Commenters proposed disabling Wi-Fi for specific applications as well.  While this may have limited data usage on a per application basis, it did not solve the underlying defect that was an inherent part of the iOS operating system.

**E.     While Failing to Disclose the Defect's Existence, Apple Repairs the Defect for Verizon Subscribers**

37.     On October 1, 2012, CNN reported that while Apple had not commented formally on the Defect, Apple wrote in a posting that it had created a software update which "resolves an issue in which, under certain circumstances, iPhone 5 may use Verizon cellular data while the phone is connected to a Wi-Fi network."[37]  Verizon also indicated that it would not charge users for any data issues related to the defect.[38]  While CNN also reported that AT&T users were also experiencing surges in data use with iOS 6, there was no indication that Apple had created a software update that

---

[33] Discussions.Apple,com, The iPhone 5 uses Cellular Data Over Wifi?, https://discussions.apple.com/thread/4348072?start=60&tstart=0 (last visited Nov. 30, 2015).

[34] Glenn Fleishman, *What's Behind Mysterious Ios 6 Cellular Data Usage*, tidBITS, (Sept. 29, 2012) http://tidbits.com/article/13304, (last visited Nov. 19, 2015).

[35] Glenn Fleishman, *What's Behind Mysterious Ios 6 Cellular Data Usage*, tidBITS, (Sept. 29, 2012) http://tidbits.com/article/13304, (last visited Nov. 19, 2015).

[36] The article even describes this solution as "crazy making." Glenn Fleishman, *What's Behind Mysterious Ios 6 Cellular Data Usage*, tidBITS, (Sept. 29, 2012) http://tidbits.com/article/13304, (last visited Nov. 19, 2015).

[37] Money.cnn.com, http://money.cnn.com/2012/10/01/technology/iphone-5-data-overage/index.html (last visited Nov. 19, 2012).

[38] Money.cnn.com, http://money.cnn.com/2012/10/01/technology/iphone-5-data-overage/index.html (last visited Nov. 19, 2012).

would remedy the issue for AT&T subscribers.[39]  Thus, Apple was clearly on notice of and able to

remedy the Defect.  Despite being material to the reasonable consumer, Apple chose not to inform

AT&T iPhone 5 consumer about the Defect. Moreover, while Apple moved to promptly repair the

Defect for Verizon subscribers, Apple deliberately refrained from repairing the Defect for AT&T

subscribers.

38.    In addition, the iPhone 5 was already facing significant criticism about the Apple

Maps program.[40]  In fact, Apple terminated longtime executive Scott Forstall over the Apple Maps

debacle, and Apple CEO Timothy Cook publicly apologized for its shortcomings.[41]  The last thing

Apple wanted to do now was admit that the very operating system it was touting as being

revolutionary was actually seriously flawed in a way that would cost its customers much more than

using the rival Android platforms used by Samsung: its chief competitor.

39.    Moreover, Apple knew it could implement a software update for Verizon subscribers

while simultaneously withholding such an update for AT&T subscribers because the iPhone 5's are

slightly different for different carriers.  For example, Verizon operates on the Code Division Multiple

Access (CDMA) radio system while AT&T operated on the Global System for Mobiles (GSM) radio

system.[42]  Neither the iPhone 5 nor the iPhone 5s were designed to be compatible with both systems.

Thus, a repair to iPhone 5 and iPhone 5s' on Verizon's CDMA network would have no effect on

Apple Devices on AT&T's GSM network.

40.    By late October, 2012, a follow up story ran on TidBITS.com which noted that the

increasing reports regarding use of cellular data while connected to Wi-Fi networks was "becoming

---

[39] Money.cnn.com, http://money.cnn.com/2012/10/01/technology/iphone-5-data-overage/index.html (last visited Nov. 19, 2012).

[40] Brian X. Chen and Nick Wingfield, *Apple Fires a Manager Over Its Misfire on Maps,* New York Times: Bits, http://bits.blogs.nytimes.com/2012/11/27/apple-fires-maps-manager/?_r=0 (last visited Dec. 1, 2015).

[41] Brian X. Chen and Nick Wingfield, *Apple Fires a Manager Over Its Misfire on Maps,* New York Times: Bits, http://bits.blogs.nytimes.com/2012/11/27/apple-fires-maps-manager/?_r=0 (last visited Dec. 1, 2015).

[42] Sascha Segan, *CDMA vs. GSM: What's the Difference?* Pcmag.com, (Feb. 6, 2015) http://www.pcmag.com/article2/0,2817,2407896,00.asp (last visited Nov. 30, 2015).

more and more difficult to ignore."[43]  The article indicated that even members of the TidBITS staff believed that they had experienced the phenomenon.[44]  Moreover, the TidBITS article noted two key modes of consumer behavior related to smartphones such as the iPhone 5.  First, consumers pay a set price per month for a specified amount of cellular data on the AT&T network.  To exceed that limit was expensive enough that consumers were careful to avoid exceeding that limit.  Thus, "[f]or my iPhone to cost me money gratuitously, beyond whatever control I can achieve through such care, is wrong."[45]  Second, consumers expect that when a "[mobile] device has a Wi-Fi connection…it will use virtually *no* cellular data…This expectation is both reasonable, because if it is violated there is a danger that you can exceed your data cap…and deeply ingrained, because that is demonstrably just how iOS 5 and earlier systems behaved."[46]

41.     These axioms are concise articulations of how a reasonable consumer would expect their cutting edge mobile device to operate.  As previously discussed, AT&T's move away from unlimited data was widely known such that Apple was certainly aware that AT&T had moved away from offering subscribers unlimited data plans.  Because the Defect resulted in significant data overcharges for iPhone 5 users, Apple knew that the effects of the Defect were material to the reasonable consumer.  Moreover, Apple knew that consumers would be damaged when their mobile devices automatically switched away from a Wi-Fi system to cellular when they were streaming large amounts of data.  Correspondingly, a reasonable consumer can expect that Apple would disclose material information about the Defect and that it would properly design its devices and/or fix them so they would not cause financial damage to consumers.

---

[43] Matt Neuberg, *Mysterious Ios 6 Cellular Data Usage: A Deeper Look.* tidBITS, (Oct. 24, 2012) http://tidbits.com/article/13354 (last visited Nov. 19, 2015).

[44] Matt Neuberg, *Mysterious Ios 6 Cellular Data Usage: A Deeper Look.* tidBITS, (Oct. 24, 2012) http://tidbits.com/article/13354 (last visited Nov. 19, 2015).

[45] Matt Neuberg, *Mysterious Ios 6 Cellular Data Usage: A Deeper Look.* tidBITS, (Oct. 24, 2012) http://tidbits.com/article/13354 (last visited Nov. 19, 2015).

[46] Matt Neuberg, *Mysterious Ios 6 Cellular Data Usage: A Deeper Look.* tidBITS, (Oct. 24, 2012) http://tidbits.com/article/13354 (last visited Nov. 19, 2015).

42.     Apple was keenly aware that its consumers purchased their iPhone 5 running on iOS 6 because its consumers sought to enjoy the benefits of Apple's most advanced technology.  Because these mobile devices were built to stream movies and music, to support graphic intensive videogames and three-dimensional maps, consumers can reasonably expect that these products will perform these basic functions using available Wi-Fi signals instead of switching over to cellular. This is particularly true because Apple itself informed the public that the Apple 5 was capable of streaming data via Wi-Fi up to 50% faster compared to cellular.

43.     The TidBITS.com follow up story concluded, in part, that "iOS 6 does use more cellular data than previous systems did, and it appears to use it in circumstances where previous systems did not...Something must be done, and I have little doubt that it will be."[47]

44.     Instead, the Defect persisted for iPhone AT&T subscribers into and through 2013 and later throughout 2014.  Through this entire time period, Apple made no formal comment and completely failed to provide any disclosures to consumers about the Defect.[48]  Even though Apple had issued a patch for the Defect for Verizon subscribers, consumers running the iPhone 5 on the AT&T network had no idea if or when a patch would ever be issued for them.  AT&T also never offered public comment on the issue.  If subscribers called AT&T regarding the overage, AT&T would often issue the subscriber a credit.  However, subscribers had to contact AT&T to receive the credit.[49]  To consistently contact their carrier to remedy billing issues resulting from Apple's undisclosed technical failure is not the consumers' burden.  Apple was responsible for notifying consumers about the Defect and taking the necessary steps to remedy its effects, including

---

[47] Matt Neuberg, *Mysterious Ios 6 Cellular Data Usage: A Deeper Look.* tidBITS, (Oct. 24, 2012) http://tidbits.com/article/13354 (last visited Nov. 19, 2015).

[48] Steve Rosenbaum, *ATT and Apple Battle Over Data Leakage,* Forbes.com (May 28, 2013) http://www.forbes.com/sites/stevenrosenbaum/2013/05/28/att-and-apple-battle-over-data-leakage/3/ (last visited Nov. 19, 2015).

[49] Steve Rosenbaum, *ATT iPhone Customers Hit with Massive Data Bug,* huffingtonpost.com, (Oct. 13, 2012) http://www.huffingtonpost.com/steve-rosenbaum/att-iphone-customers-hit_b_1963505.html (last visited Nov. 19, 2015).

1   reimbursing them for the hefty unexpected data charges that the incurred unknowingly. Apple did

2   neither.[50]

3   **F.      Despite Indications of a Repair, the Problem Persists for AT&T Subscribers Through
         the Release of iOS 7 and iPhone 5s**

4

5          45.      In June, 2013, a report on Huffingtonpost.com indicated that Apple updated iOS to

6   6.1.4.[51]  Insodoing, the report indicated that Apple had finally solved the Defect for AT&T

7   subscribers.[52]  Still, Apple materially omitted and failed to disclose that there was Defect.  Apple

8   hoped the problem would blow over undetected as though the Defect had never occurred.

9          46.      Nonetheless, consumers continued reporting problems on message boards.

10  As late as fall of 2014, after the release of the iPhone 5s, AT&T subscribers were still taking to the

11  same message thread to note the complaints that their Apple Devices were using cellular data when

12  they were in the vicinity of a Wi-Fi signal.  By this point, each of the Apple Devices had been

13  released with various versions of iOS 6 or 7, or iOS 8.0.

14          **Itsmethebee**
         Sep 4, 2014 5:22 PM
15          Re: The iPhone 5 uses Cellular Data over WiFi?
         in response to truerock
16
         Like I said, I have 2 iPhones that are working perfectly and 1 that has this
17          issue. I wouldn't know how to start reproducing this (nor do I want to) in
         the other 2 iPhones. All 3 are on the latest iOS 7 patch. The first post in
18          this thread was posted almost 2 years ago. The problem has been
         discussed and re-hashed 1000+ times. It's patently clear that this is not a
19          problem with how we use the phone.
         I was hoping that someone who had the issue could point me to a
20          solution. I'm disappointed to find out that after 2 years, a problem that
         started with iOS 6 is still happening in iOS 7 and apparently there is no fix
21          from Apple. I was looking forward to the new iPhone 6. Not going to

22

23  _____
         [50] Steve Rosenbaum, *ATT and Apple Battle Over Data Leakage,* Forbes.com (May 28, 2013)
24  http://www.forbes.com/sites/stevenrosenbaum/2013/05/28/att-and-apple-battle-over-data-leakage/3/
    (last visited Nov. 19, 2015).
25          [51] Steve Rosenbaum, *ATT And Apple Data Leakage Battle Continues*, huffingtonpost.com (June
    15, 2013) http://www.huffingtonpost.com/steve-rosenbaum/att-and-apple-data-
26  leakag_b_3447553.html (last visited Nov. 19, 2015).
27          [52] Steve Rosenbaum, *ATT And Apple Data Leakage Battle Continues*, huffingtonpost.com (June
    15, 2013) http://www.huffingtonpost.com/steve-rosenbaum/att-and-apple-data-
28  leakag_b_3447553.html (last visited Nov. 19, 2015).

happen if such a critical issue can drag on for 2 years... and apparently people are OK with it? Because it's Apple? [53]

**Itsmethebee**
Sep 5, 2014 12:04 PM
Re: The iPhone 5 uses Cellular Data over WiFi?
in response to shohidulfromdhaka

I've confirmed that my iPhone can connect via WiFi. When at home, it's connected via WiFi. It works even with data switched off. No matter how many apps I have, and how badly I "miss-configure" them to access the internet or unnecessarily backup stuff to iCloud,
all that data should be going via WiFi. Yet, when I look at my ATT bill, I see my phone using cellular data every 3 hours, connected to WiFior not. The period doesn't matter
(others have reported their phones accessing data every 6 hours, etc. I think that's carrier dependent). What's significant is that some of those data usage happens in the wee hours, like 3am, when I'm sleeping (so no intentional phone activity) and the phone is connected
to Wi-Fi because it's at home, next to me.
If the theory that when the phone goes to sleep (stand-by), the WiFi disconnects is correct, that in itself would be an even more serious problem (if that's by design). I don't believe that's true. There was a big hoopla in the iOS 6 days, and they issued a fix specifically to
address that. That's why truerock can't reproduce it.
So, why is it that cellular data is being used at all (as reported by ATT and charged to My account) when the phone is connected to WiFi?[54]

**knight1994**
Oct 8, 2014 7:48 PM
Re: The iPhone 5 uses Cellular Data over WiFi?
in response to DJPlayedYA

No reason to let this subject die. I just upgraded to three IPhone 5s and blew through my data in 1 week. After reading many of the posts and spending an hour on chat with Apple, looks like the best solution is to turn data off.
Completely ridiculous IMHO. Hopeful for a more useful solution from Apple in the near future. Maybe less than two years.
Unbelievable this thread has gone this long with no reasonable solution from Apple.
Thanks alot.[55]

---

[53] Discussions.Apple,com, The iPhone 5 uses Cellular Data Over Wifi?, https://discussions.apple.com/thread/4348072?start=1125&tstart=0 (last visited Dec. 1, 2015).

[54] Discussions.Apple,com, The iPhone 5 uses Cellular Data Over Wifi?, https://discussions.apple.com/thread/4348072?start=1125&tstart=0 (last visited Dec. 1, 2015).

47.     In fact, it does not appear that the Defect was finally resolved until the release of iOS 8.1 on October 20, 2014.  After this release, consumer complaints regarding the issue finally declined precipitously suggesting that as consumers increasingly downloaded iOS 8.1, fewer consumers were experiencing the hidden data charges that resulted from Apple Devices using earlier versions of iOS.  Throughout this lengthy period beginning with the iPhone 5's introduction more than two years earlier, Apple never disclosed the existence of the Defect to consumers.

## IV.     CLASS ACTION ALLEGATIONS

48.     Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Palmer seeks certification of a Class defined as follows:

> All AT&T wireless subscribers who purchased the Apple Devices
> during the four years prior to the filing of the complaint which ran on
> any version of iOS 6 or 7, or iOS 8.0.

49.     Excluded from the Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant.  Also, excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

50.     Plaintiff Palmer does not know the exact number of Class members at the present time.  However, due to the nature of the trade and commerce involved, there appear to be hundreds of thousands of Class members such that joinder of all Class members is impracticable.

51.     The Class is easily determined by objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other consumer fraud cases and complex class actions, and through Apple's business records.

52.     There are questions of both law and fact common to the Class.  Defendant's unlawful omissions similarly impact Class members, all of who purchased one or more Apple Devices.

53.     Plaintiff Palmer asserts claims that are typical of the Class.  Plaintiff Palmer and all Class members have been subjected to the same wrongful conduct because they all have purchased

---

[55] Discussions.Apple,com, The iPhone 5 uses Cellular Data Over Wifi?, https://discussions.apple.com/thread/4348072?start=1125&tstart=0 (last visited Dec. 1, 2015).

1   Apple Devices that were marketed and sold with any version of Apple software containing the

2   Defect. As a result, and like other members of the Class, Plaintiff Palmer purchased and paid an

3   amount for Apple Devices which they otherwise would not have paid.

4           54.     As a purchaser and user of at least one Apple Device, Plaintiff Palmer will fairly and

5   adequately represent and protect the interests of the Class.  Plaintiff Palmer and the Class are

6   represented by counsel competent and experienced in both consumer protection and class action

7   litigation.

8           55.     Class certification is appropriate because Defendant has acted on grounds that apply

9   generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate

10  respecting the Class as a whole.

11          56.     Class certification is also appropriate because common questions of law and fact

12  substantially predominate over any questions that may affect only individual members of the Class,

13  including, *inter alia*, the following:

14          a.   Whether the Defect affected each version of iOS 6 or 7 and/or
                 with iOS 8.0;
15
16          b.   Whether Defendant failed to disclose in their advertising that
                 the Defect would disable Wi-Fi when the CPU was not being
17               used;

18          c.   Whether Defendant failed to disclose in their advertising that
                 the Defect would cause the Apple Devices to stream data
19               through cellular signals without consumers' knowledge;

20          d.   Whether Defendant had a duty to disclose that the Defect
                 caused the sleeping CPU to trigger the iPhone's software to
21               disable Wi-Fi;

22          e.   Whether Defendant had a duty to disclose that the Defect
                 would cause the Apple Devices to stream data through cellular
23               signals without consumers' knowledge;

24          f.   Whether Defendant had a duty to disclose material facts
                 regarding all versions of iOS 6 iOS 7's and iOS 8.0's failure to
25               disable Wi-Fi when the CPU went into sleep mode;

26          g.   Whether Defendant's nondisclosures would be material to a
                 reasonable consumer;
27
            h.   Whether Defendant's nondisclosures were likely to deceive a
28               reasonable consumer;

i.   Whether Defendant's conduct violates the UCL, FAL and CLRA;

j.   Whether the challenged practices harmed Plaintiff Palmer and members of the Class; and

k.   Whether Plaintiff Palmer and members of the Class are entitled to damages, restitution, equitable relief, and/or injunctive relief.

57.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable. Furthermore, because the restitution and/or damages suffered, and continue to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult, if not impossible, for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

58.   The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant.  In contrast, a class action is manageable, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
(Cal. Bus. & Prof. Code § 17200, *et seq.*)

59.   Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

60.   Plaintiff Palmer brings this claim on behalf of himself and all Class members.

61.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practice."  Defendant has engaged in unlawful, and unfair, and fraudulent business acts and practices in violation of the UCL.

62.   Defendant has violated the unlawful prong by virtue of their violations of the CLRA and FAL as described below.

63.   Apple has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint offend established public policy supporting truth in advertising to

consumers.  Defendant's conduct is immoral, unethical, oppressive, unscrupulous, and injurious to consumers.  The harm that these acts and practices cause to consumers greatly outweighs any benefits associated with them.  Apple's conduct also impairs competition within the market for smart phones.  Because Apple never disclosed the Defect, Plaintiff Palmer and Class members did not make fully informed decisions about the kind of smart phones to purchase or the price to pay for such products.  Plaintiff and the Class did not know that the iPhone 5 came with a hidden monthly surcharge in the form of increased data charges on their phone bills due to the Defect.

64.     Defendant has violated the fraudulent prong of section 17200 because their material misrepresentations and omissions were likely to deceive a reasonable consumer and the true facts would be material to a reasonable consumer.

65.     As alleged herein, Apple's advertising for the Apple Devices creates the impression of providing consumers with the most advanced software and hardware available and therefore a superior quality mobile device on which consumers may reasonably rely on to perform at a high level, without hidden costs.  Apple materially admits and failed to disclose in its advertisements for Apple Devices that it does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode so that it would instead stream data over the AT&T cellular network without the subscribers' knowledge and causing the consumer to incur significant data charges.

66.     Apple had a duty to disclose that the Defect in the Apple Devices does not ensure that all versions of iOS 6 and 7 and iOS 8.0 and that it disabled the Wi-Fi when the CPU went into sleep mode. This duty arises from (1) its exclusive knowledge of all versions of iOS 6 and 7's design and iOS 8.0's design and the hardware contained within the Apple Devices; and (2) its partial representations and/or misrepresentations to the contrary in its advertising, *i.e.*, that the Apple Devices include the most advance technology available for mobile devices.

67.     Apple had a duty to disclose that the Defect in the Apple Devices resulted in consumers streaming data over the AT&T cellular network without the subscribers' knowledge, arising from (1) its exclusive knowledge of iOS 6 and 7's design and iOS 8.0's design and the hardware contained within the Apple Devices; and (2) its partial representations and/or

COMPLAINT                                                    - 21 -
Case No.:
010559-11  829086 V1

misrepresentations to the contrary in its advertising, *i.e.*, that the Apple Devices include the most advance technology available for mobile devices.

68.     Apple failed to disclose that it does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode thereby disabling Wi-Fi connections.

69.     Apple failed to disclose that it does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would cause Apple Devices to stream data over the AT&T cellular network without the subscribers' knowledge.

70.     Apple's omissions are material. Because of the resulting data overcharges, reasonable consumers would consider the misrepresented and omitted facts (including the failure to ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi  connection to sever when it went into sleep mode thereby disabling their Wi-Fi connections so that the Apple Devices would stream data over the AT&T cellular network without the subscribers' knowledge) to be important in determining whether or not to purchase Apple Devices.

71.     Reasonable consumers were likely to be deceived, and were in fact misled, by Defendant's misrepresentations and omissions.

72.     Apple knows or reasonably should know that the marketing and sale of its Apple Devices was and is deceptive.

73.     Plaintiff Palmer has suffered injury in fact, including the loss of money, as a result of Defendant's unlawful, unfair, and/or deceptive practices.  Plaintiff Palmer and members of the Class were directly and proximately injured by Apple's conduct and lost money as a result of Apple's material misrepresentations and/or omissions, because they would not have purchased or paid as much for Apple Devices had they known that Apple does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode thereby disabling Wi-Fi connections so that the Apple Devices would instead stream data over the AT&T cellular network without the subscribers' knowledge.

74.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

75.     Plaintiff request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair and deceptive business practices, to restore to Plaintiff Palmer and members of the Class any money that Defendant acquired by unfair competition, and to provide such other relief as set forth below.

<div align="center">

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750,** *et seq.***)**

</div>

76.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

77.     Plaintiff Palmer brings this claim on behalf of herself and all Class members.

78.     Defendants are "persons" under Cal. Civ. Code § 1761(c).

79.     Plaintiff Palmer and Class members are "consumers," as defined by Cal. Civ. Code § 1761(d), who purchased Apple Devices, which are "goods or services" under Cal. Civ. Code § 1770(a).

80.     Cal. Civ. Code § 1770(a)(2) prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services."

81.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…."

82.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

83.     Apple violated these CLRA provisions by misrepresenting the sponsorship, approval, certification, characteristics, benefits, standards, and quality of its Apple Devices and omitting disclosure of material aspects thereof in its advertising.

84.     As alleged herein, Apple creates the impression of providing consumers with the most advanced software and hardware available and therefore a superior quality mobile device on which

consumers may reasonably rely to perform at a high level, without hidden costs.  Apple materially omits and failed to disclose for Apple Devices that it does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode resulting in the Apple Devices streaming data over the AT&T cellular network without the subscribers' knowledge and resulted in data overcharges incurred by consumers.

85.     Apple had a duty to disclose in its advertising for Apple Devices that it does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode,  arising from (1) its exclusive knowledge of all versions of iOS 6 and 7's design and iOS 8.0's design and the hardware contained within the Apple Devices; and (2) its partial representations and/or misrepresentations to the contrary in its advertising, *i.e.*, that the Apple Devices include the most advance technology available for mobile devices.

86.     Apple had a duty to disclose in its advertising the Apple Devices to stream data over the AT&T cellular network without the subscribers' knowledge, arising from (1) its exclusive knowledge of iOS 6 and 7's design and iOS 8.0's design and the hardware contained within the Apple Devices; and (2) its partial representations and/or misrepresentations to the contrary in its advertising, *i.e.*, that the Apple Devices include the most advance technology available for mobile devices.

87.     Apple's omissions are material. Because of the resulting data overcharges, reasonable consumers would consider the misrepresented and omitted facts (including the failure to ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode, thereby disabling Wi-Fi and allowing the Apple Devices to stream data over the AT&T cellular network without the subscribers' knowledge) to be important in determining whether or not to purchase Apple Devices.

88.     Reasonable consumers were likely to be deceived, and were in fact misled, by Defendant's misrepresentations and omissions.

89.     Apple knows or reasonably should know that the marketing and sale of its Apple Devices was and is deceptive.

90.     Plaintiff Palmer and members of the Class were directly and proximately injured by Apple's conduct and lost money as a result of Apple's material misrepresentations and/or omissions, because they would not have purchased or paid as much for Apple Devices had they known that Apple does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode, thereby disabling Wi-Fi and allowing the Apple Devices to stream data over the AT&T cellular network without the subscribers' knowledge.

91.     Plaintiff Palmer and members of the Class were also directly and proximately injured by Apple's conduct and lost money as a result of Apple's material misrepresentations and/or omissions, because they incurred additional data costs without their knowledge.

92.     Plaintiff Palmer and members of the Class were also directly and proximately injured by Apple's conduct and lost money as a result of Apple's material misrepresentations and/or omissions, because they incurred additional data costs without their knowledge.

93.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a general practice that is still being perpetuated and repeated.

94.     In accordance with Civil Code § 1780 (a), Plaintiff Palmer and members of the Class seek injunctive and equitable relief for Apple's violations of the CLRA, including an injunction to enjoin Apple from continuing its deceptive advertising and sales practices.  In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiff Palmer will amend this Class Action Complaint to include a request for damages.  Plaintiff Palmer and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

95.     Plaintiff Palmer includes an affidavit with this Complaint reflecting that venue in this District is proper, to the extent such an affidavit is required by Cal. Civ. Code § 1780(d) in federal court.

**THIRD CAUSE OF ACTION**

**VIOLATIONS OF THE FALSE ADVERTSING LAW**
**(CAL. BUS. & PROF CODE §§ 17500,** *et seq.***)**

96.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

97.     Plaintiff Palmer brings this claim on behalf of himself and all Class members.

98.     California Business & Professions Code §§ 17500, *et seq.* (the "FAL") broadly proscribes deceptive advertising in this State.  Section 17500 makes it unlawful for any corporation intending to sell products or perform services to make any statement in advertising those products or services concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or not to sell those products or services as advertised at the price stated therein, or as so advertised.

99.     When the seller has a duty to disclose material facts about a product, the sale of the product to consumers without disclosure of such material facts runs afoul of the FAL.

100.     As alleged herein, Apple's advertising for the Apple Devices creates the impression that Apple is providing consumers with the most advanced software and hardware available and that its products are a superior quality mobile device.  Apple failed to disclose in its advertisements for Apple Devices that it does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode, thereby disabling Wi-Fi and allowing the Apple Devices to stream data over the AT&T cellular network without the subscribers' knowledge.

101.     Apple had a duty to disclose in its advertising for Apple Devices that it does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode thereby disabling Wi-Fi, arising from (1) its exclusive knowledge of all versions of iOS 6 and 7's design and iOS 8.0's design and the hardware contained within the Apple Devices; and (2) its partial representations and/or misrepresentations to the contrary in its advertising, *i.e.*, that the Apple Devices include the most advance technology available for mobile devices.

102.     Apple had a duty to disclose in its advertising the Apple Devices to stream data over the AT&T cellular network without the subscribers' knowledge, arising from (1) its exclusive knowledge of iOS 6 and 7's design and iOS 8.0's design and the hardware contained within the Apple Devices; and (2) its partial representations and/or misrepresentations to the contrary in its advertising, *i.e.*, that the Apple Devices include the most advance technology available for mobile devices.

103.     Apple's omissions are material. Because of the resulting data overcharges, reasonable consumers would consider the misrepresented and omitted facts (including the failure to ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode thereby disabling Wi-Fi and allowing the Apple Devices to stream data over the AT&T cellular network without the subscribers' knowledge) to be important in determining whether or not to purchase Apple Devices.

104.     Reasonable consumers were likely to be deceived, and were in fact misled, by Defendant's misrepresentations and omissions.

105.     Apple knows or reasonably should know that the marketing and sale of its Apple Devices was and is deceptive.

106.     Plaintiff Palmer has suffered injury in fact, including the loss of money, as a result of Defendant's unlawful, unfair, and/or deceptive practices.  Plaintiff Palmer and members of the Class were directly and proximately injured by Apple's conduct and lost money as a result of Apple's material misrepresentations and/or omissions, because they would not have purchased or paid as much for Apple Devices had they known that Apple does not ensure that all versions of iOS 6 and 7 and iOS 8.0 would prevent the Apple Device's CPUs from triggering the Wi-Fi connection to sever when it went into sleep mode thereby disabling Wi-Fi and allowing the Apple Devices to stream data over the AT&T cellular network without the subscribers' knowledge.

107.     Plaintiff Palmer and members of the Class were also directly and proximately injured by Apple's conduct and lost money as a result of Apple's material misrepresentations and/or omissions, because they incurred additional data costs without their knowledge.

108.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

109.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair and deceptive business practices, to restore to Plaintiff Palmer and members of the Class any money that Defendant acquired by unfair competition, and to provide such other relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Palmer, individually and on behalf of all others similarly situated, respectfully request that this Court enter a judgment against Defendant and in favor of Plaintiff, and grant the following relief:

A.    Determine that this action may be maintained as a Class action with respect to the Class identified herein and certify it as such under Rules 23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiff Palmer as Class Representatives and her counsel as Class Counsel;

B.    Declare, adjudge and decree the conduct of the Defendant as alleged herein to be unlawful, unfair and/or deceptive;

C.    Enjoin Defendant from continuing the unfair and deceptive marketing and sale of their Apple Devices;

D.    Award Plaintiff Palmer and the Class monetary relief in the form of restitution or damages resulting from Defendant's illegal business practices.

E.    Award Plaintiff and the Class reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

F.    Award Plaintiff and the Class such other further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMAND

Plaintiff, by counsel, requests a trial by jury for all claims so triable.

COMPLAINT                                                 - 28 -
Case No.:
010559-11  829086 V1

1

2    DATED: December 17, 2015          HAGENS BERMAN SOBOL SHAPIRO LLP

3                                          By: */s/ Jeff D. Friedman*

4                                            JEFF D. FRIEDMAN (SBN 173886)
715 Hearst Avenue, Suite 202

5                                          Berkeley, CA 94710
Telephone: (510) 725-3000

6                                          Facsimile: (510) 725-3001
jefff@hbsslaw.com

7

8                                          Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP

9                                          301 N. Lake Avenue, Suite 203
Pasadena, CA  91101

10                                       Telephone:  (213) 330-7150
Facsimile:  (213) 330-7152

11                                       christopherp@hbsslaw.com

12                                          Steve W. Berman (*pro hac vice* to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP

13                                          1918 Eighth Avenue, Suite 3300
Seattle, WA  98101

14                                         Telephone:  (206) 623-7292
steve@hbsslaw.com

15

16                                          Andrew Levetown
Levetown & Jenkins, LLP

17                                          One Metro Center
700 12th Street, N.W., Suite 700

18                                          Washington, DC  20005
Telephone:  (202) 379-4899

19                                          Facsimile:  (866) 278-2973
alevetown@levjen.com

20

21                                          *Attorneys for Plaintiff and the Proposed Class*

22

23

24

25

26

27

28