1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

THOMAS A. PALMER,

     Plaintiff,

  v.

APPLE INC.,

     Defendant.

Case No.  5:15-cv-05808-RMW

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 17

In this putative consumer class action involving smartphones, defendant Apple Inc. moves to dismiss plaintiff Thomas A. Palmer's complaint pursuant to Federal Rule of Civil Procedure 12. Dkt. No. 17. For the reasons set forth below, the court GRANTS defendant's motion to dismiss with leave to amend.

**I.      BACKGROUND**

This case involves allegations that certain versions of Apple's iPhone smartphone used excessive amounts of data on AT&T's cellular network. *See* Dkt. No. 1 (Compl.). According to the complaint, Apple introduced the iPhone 5 in September 2012. *Id.* ¶ 3. According to plaintiff, the major new features of the iPhone 5 compared to previous Apple smartphones included: (1) the central processing unit ("CPU") called Swift; (2) a new graphics processing unit ("GPU"); and (3) Apple's new iOS 6 operating system. *Id.* ¶¶ 3-4.

Plaintiff alleges that Apple touted particular features of the iPhone 5. In opposing Apple's motion to dismiss, plaintiff cites four specific examples of Apple's alleged statements about the iPhone 5's capabilities:

1. The "ability to stream data through Wi-Fi or via LTE: each at much faster speeds than prior iPhones," and, likewise, "lightening [sic] fast internet and video over Wi-Fi or LTE." Compl. ¶¶ 3, 5, 22.

2. Compatibility "with higher performing Wi-Fi connections which allowed users to download data at rates as fast as 150 Mbps" *Id.* ¶ 21.

3. Support for "both DC-HSDPA and LTE ultrafast cellular standards," which "allowed consumers to download data at rates up to 100 Mbps over a cellular network." *Id.* ¶ 20.

4. "CPU and graphics speeds that were roughly twice as fast as [the iPhone 5's] predecessor." *Id.* ¶ 3.

*See* Dkt. No. 28 at 10-11.[1] Plaintiff alleges that at the time Apple released the iPhone 5, many cellular providers' data plans only allowed consumers a limited amount of data each month for a set price and charged more for any data overages. Compl. ¶ 6.

Plaintiff alleges that "soon after the iPhone 5's release, consumers began noticing a pattern that Apple had not advertised when it introduced the iPhone 5." *Id.* Specifically, "[d]espite being connected to Wi-Fi signals, iPhone 5 purchasers experienced massive surges in the amount of cellular data they were using each month." *Id.* According to plaintiff, a "Defect" in how iOS managed the iPhone 5's hardware was responsible for the increased cellular data usage:

> In the iPhone 5, when a consumer streamed high volumes of data . . . the GPU would take over all video decompression, decoding, and presentation to the display. As a result, the Swift CPU no longer played a role in the video decompression, decoding, and presentation process, the Swift CPU would go into sleep mode to conserve battery life. Once the Swift CPU was asleep, the iPhone 5's operating system would automatically trigger the Wi-Fi connection to end and the phone would switch from streaming data via a Wi-Fi signal to streaming data via a cellular signal.

*Id.* ¶ 7. Plaintiff alleges that "[b]ecause the phones switched to cellular connections instead of

---

[1] While plaintiff alleges that Apple represented that the iPhone 5 had these capabilities, it is not clear from the complaint whether the specific words quoted above are Apple's or plaintiff's.

5:15-cv-05808-RMW
ORDER GRANTING MOTION TO DISMISS
RS

*United States District Court*
*Northern District of California*

1   Wi-Fi, consumers unwittingly and unknowingly used excessive amounts of cellular data without

2   any warning or notice from Apple." *Id.* Plaintiff alleges that within two weeks of when Apple

3   became aware of this "Defect," Apple "provided a repair for the Defect for iPhone 5 owners on the

4   Verizon network." *Id.* ¶ 8. However, according to the complaint, "Apple did not fix or even

5   disclose the Defect to AT&T's iPhone 5, 5S, 5C and iPhone 6 and 6 plus owners" until the release

6   of iOS 8.1 in October 2014." *Id.*

7       Plaintiff Palmer is a California resident. *Id.* ¶ 10. Plaintiff alleges that he is an AT&T

8   wireless customer who purchased an iPhone 5 in May 2013 and an iPhone 5s in June 2014, both

9   from the AT&T Wireless store in Capitola, California. *Id.* Plaintiff alleges that he "saw the

10  advertisements and statements which were material to his decision to purchase." *Id.* According to

11  plaintiff, his "iPhone and iPhone 5s were used to stream video via YouTube, snapchat, and Netflix

12  in areas with Wi-Fi." *Id.* Moreover, plaintiff alleges that he "would not have purchased an iPhone

13  5 or 5s nor paid as much had these advertisements disclosed the truth regarding the Defect." *Id.*

14      Plaintiff commenced this lawsuit on December 17, 2015. Dkt. No. 1. Plaintiff's complaint

15  asserts the following causes of action:

16      1.  Violation of California's Unfair Competition Law ("UCL"), Cal.
            Bus. & Prof. Code §§ 17200, et seq.;

17

18      2.  Violation of California's Consumer Legal Remedies Act
            ("CLRA"), Cal. Civ. Code §§ 1750, et seq.;

19      3.  Violation of California's False Advertising Law ("FAL"), Cal.
            Bus. & Profs. Code §§ 17500, et seq.

20

21  *Id.* Plaintiff seeks to represent a class of "[a]ll AT&T wireless subscribers who purchased the

    Apple Devices during the four years prior to the filing of the complaint which ran on any version

22  of iOS 6 or 7, or iOS 8.0." *Id.* ¶ 48. The complaint defines the "Apple Devices" at issue as "AT&T

23  versions of the iPhone 5, the iPhone 5s and iPhone 5c." *Id.* ¶ 11. Plaintiff seeks monetary and

24  injunctive relief. *Id.* at 28.

25      Apple moved to dismiss the complaint on February 25, 2016. Dkt. No. 17. Plaintiff filed an

26  opposition on March 18, 2016, Dkt. No. 27, and Apple filed a reply on March 31, 2016, Dkt. No.

27

28                                                  3

United States District Court
Northern District of California

28. The court held a hearing on the instant motion on April 15, 2016.

## II.     ANALYSIS

### A.     Legal Standards

A challenge to a plaintiff's Article III standing is properly raised under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

### B.     Standing

Apple argues that plaintiff lacks standing because he failed to allege specific, material statements upon which he relied in his decision to purchase his iPhones and how his reliance on any specific statements caused his purported injury. Dkt. No. 17 at 5-6. Apple further argues that

4

United States District Court
Northern District of California

plaintiff lacks standing to pursue injunctive relief because Apple fixed the alleged Defect, and no putative class member is suffering ongoing injury. *Id.* at 7. Standing under Article III of the U.S. Constitution requires: (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—"there must be a causal connection between the injury and the conduct complained of"; and (3) redressability—"it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations and footnote omitted). Apple does not seem to argue that plaintiff has not suffered an injury in fact; rather, Apple challenges plaintiff's allegations regarding causation and redressability in the context of the consumer protection laws at issue here.

### 1. Failure to Allege Specific Statements upon which Plaintiff Relied

To establish standing under the UCL or the FAL, a plaintiff must allege that the plaintiff lost money or property because of the alleged violation. Cal. Bus. & Prof. Code §§ 17204, 17535. In a case involving false statements, the plaintiff must also allege that "(1) the defendant made a false representation about a product, (2) the consumer purchased the product in reliance on the misrepresentation, and (3) he would not have purchased the product otherwise." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1109 (9th Cir. 2013) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)). Similarly, to adequately plead a CLRA claim, a plaintiff must allege that the plaintiff relied on the defendant's alleged misrepresentation and that the plaintiff suffered economic injury as a result. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).

Apple argues that plaintiff does not identify which specific statements or advertisements he saw, how he relied on such statements or advertisements, or whether such statements or advertisements were even made by Apple. Dkt. No. 17 at 6. In response, plaintiff points to the statements from Apple cited earlier in this order regarding the performance of the iPhone 5 with Wi-Fi and cellular networks and with graphical applications. *See* Dkt. No. 27 at 6 (citing Compl. ¶¶ 3, 4, 8, 19-23, 37, 42), 10-11 (citing Compl. ¶¶ 3, 5, 20-22). Plaintiff further points out that the complaint alleges that plaintiff "saw the advertisements and statements which were material to his

5

1   decision to purchase" and "would not have purchased an iPhone 5 or 5s nor paid as much had

2   these advertisements disclosed the truth regarding the Defect." Compl. ¶ 10.

3           Plaintiff's arguments in support of standing miss the mark. First, it is not clear whether the

4   specific characterizations of the iPhone 5 in plaintiff's complaint came from Apple, from plaintiff

5   himself, or from a third party. Second, while plaintiff alleges that he saw "the advertisements and

6   statements," he does not specify *which* specific advertisements or statements he personally saw.

7   "A party does not have standing to challenge statements or advertisements that she never saw."

8   *Ham v. Hain Celestial Grp.*, Inc., 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014). Plaintiff attempts

9   to distinguish *Ham* by arguing that *Ham*, unlike the instant case, involved alleged affirmative

10   misrepresentations and not simply material omissions. Dkt. No. 27 at 6. The court finds this

11   argument unpersuasive, at least because plaintiff's complaint repeatedly refers to alleged

12   misrepresentations *and* omissions. *See, e.g.*, Compl. ¶¶ 14, 64, 70-71, 73, 87-88, 90-92, 103-04,

13   106-07. Even if the court were to ignore the complaint's recitation of "misrepresentations" and

14   limited plaintiff's allegations to "omissions," as described below, plaintiff has failed to allege any

15   actionable omissions because plaintiff has not alleged a basis for a duty to disclose.

16           The instant case is analogous to *Pirozzi v. Apple*, a case in which another court in this

17   district found that a plaintiff lacked standing because she "fail[ed] to allege specifically which

18   statements she found material to her decision to purchase an Apple Device or App." *Pirozzi v.*

19   *Apple Inc.*, 913 F.Supp.2d 840, 847 (N.D. Cal. 2012). While plaintiff attempts to distinguish

20   *Pirozzi* by arguing that Ms. Pirozzi never alleged that she saw any Apple advertisements,

21   plaintiff's failure to allege that he saw any *specific* Apple advertisements or statements is similarly

22   insufficient to establish standing.

23           Moreover, plaintiff's citation to *Hinojos* in support of a relaxed pleading standard for

24   standing under the UCL and FAL does not save plaintiff's claims. *Hinojos* involved whether Mr.

25   Hinojos had "lost money or property," 718 F.3d at 1101, not whether the defendant's alleged

26

27

28                                                                    6

United States District Court
Northern District of California

United States District Court
Northern District of California

1    misrepresentations caused his injury.[2] In contrast, in the instant case, the key questions for

2    standing are causation and redressability.

3        For the reasons above, the court concludes that plaintiff's allegations are insufficient to

4    establish that he has standing under the UCL, CLRA, or FAL.

5                        **2.    Standing to Seek Injunctive Relief**

6        Apple also argues that plaintiff lacks standing to seek injunctive relief. Apple argues that

7    because plaintiff is now aware of the alleged Defect, there is no danger that he will be misled in

8    the future. Dkt. No. 17 at 7. Plaintiff responds that denying consumers the right to seek injunctive

9    relief simply because they become aware of misrepresentations would undermine the entire

10   purpose of consumer protection laws. Dkt. No. 27 at 7 (citing *Lanovaz v. Twinings N. Am., Inc.*,

11   No. C-12-02646-RMW, 2014 WL 46822, at *10 (N.D. Cal. Jan. 6, 2014); *Ries v. Arizona*

12   *Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012)). Apple argues that *Lanovaz* and *Ries*

13   are distinguishable because those cases, unlike the instant case, involved ongoing violations of

14   consumer protection laws. Dkt. No. 28 at 5.

15       Plaintiff's complaint alleges that Apple ultimately remedied the alleged Defect. *See*

16   Compl. ¶ 47. Thus, Apple argues, there is no plausible basis to assert that anyone in the putative

17   class is suffering ongoing injury. Dkt. No. 17 at 7. Plaintiff does not directly address his own

18   allegation that Apple repaired the Defect described in the complaint. Instead, plaintiff generally

19   asserts that without injunctive relief, plaintiff cannot "be assured that subsequent updates to iOS

20   will remedy defects that can be costly to consumers." Dkt. No. 27 at 8. The court understands

21   plaintiff's concern at a general level, but plaintiff's complaint does not relate to any and all

22   "defects that can be costly to consumers." Rather, it relates to an alleged tendency of iPhones to

23   switch between Wi-Fi and cellular data networks. Because the complaint alleges that Apple

24   resolved this specific Defect and provides no reason to suggest that injury is ongoing, the court

25   finds that plaintiff lacks standing to pursue injunctive relief.

26

27   [2] "The only question before us on this appeal is whether Hinojos alleges that he 'lost money or
     property' and, therefore, has statutory standing under California law." 718 F.3d at 1101.

28
5:15-cv-05808-RMW
ORDER GRANTING MOTION TO DISMISS
RS

1    Based on the foregoing analysis, the court concludes that plaintiff does not have standing.

2    For that reason, all claims are dismissed with leave to amend consistent with this order.

3    **C.    Specificity of Fraud Allegations**

4    Apple next argues that plaintiff's CLRA, UCL, and FAL claims must be dismissed due to

5    plaintiff's failure to plead key elements of fraud. Dkt. No. 17 at 7-10. The Ninth Circuit has held

6    that "where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b)

7    requires more specificity including an account of the time, place, and specific content of the false

8    representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG*

9    *LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Additionally, the plaintiff must allege

10   "the circumstances indicating falseness or the manner in which [the] representations [or

11   omissions] were false and misleading." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D.

12   Cal. 2012) (citations omitted); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th

13   Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253

14   F.3d 423, 429 n. 6 (9th Cir. 2001). Plaintiff's claims sound in fraud, and are thus subject to Rule

15   9(b)'s pleading requirements. *See Pirozzi*, 913 F. Supp. 2d at 850 ("Plaintiff's claims under the

16   UCL, FAL, CLRA, and for Negligent Misrepresentation . . . sound in fraud, and are subject to the

17   heightened pleading requirements of Rule 9(b).") (citing *Kearns v. Ford Motor Co.*, 567 F.3d

18   1120, 1127 (9th Cir. 2009)).

19   Plaintiff does not dispute that Rule 9(b) applies but argues that "a fraud by omission claim

20   can succeed without the same level of specificity required by a normal fraud claim." Dkt. No. 27

21   at 9 (quoting *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007)). Both

22   parties agree on the specific pleading standard governing omissions:

23       [T]o plead the circumstances of omission with specificity, plaintiff
         must describe the content of the omission and where the omitted
24       information should or could have been revealed, as well as provide
         representative samples of advertisements, offers, or other
25       representations that plaintiff relied on to make her purchase and that
         failed to include the allegedly omitted information."
26
     *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009); *see* Dkt. No. 17 at 9
27

28                                              8

United States District Court
Northern District of California

1    (citing *Marolda*); Dkt. No. 27 at 9 (same).

2          The court finds plaintiff's allegations of fraud insufficient to state a claim under Rule 9(b).

3    The court noted above that plaintiff has not clarified whether the characterizations of the iPhone 5

4    in plaintiff's complaint even came from Apple. Moreover, plaintiff has not alleged which specific

5    advertisements or statements he personally saw or when they were made. Without additional

6    specificity, plaintiff's allegations are insufficient to show reliance. Statements regarding

7    "lightening [sic] fast internet and video" are little more than subjective puffery are not actionable.

8    To the extent that plaintiff relied on quantitative statements regarding the iPhone 5's performance

9    or its compatibility with Wi-Fi and cellular networks, plaintiff has not described how those

10   statements were false. Finally, to the extent that plaintiff's claims are limited to omissions,

11   plaintiff has not described where the omitted information should or could have been revealed.

12         Accordingly, the court finds that all of plaintiff's fraud-based claims should be dismissed

13   with leave to amend.

14   **D.    Omissions**

15         Apple also argues that plaintiff's allegations of actionable omissions are insufficient to

16   state a claim. To be actionable under the CLRA or the UCL, an omission must be contrary to a

17   representation actually made by the defendant, or an omission of a fact the defendant was obliged

18   to disclose. *Donohue*, 871 F. Supp. 2d at 925 (citing *Daugherty v. American Honda Motor Co.*

19   *Inc.*, 144 Cal. App. 4th 824, 835 (2006)). The parties agree that a duty to disclose generally arises

20   in one of four circumstances:

21           (1) when the defendant is the plaintiff's fiduciary; (2) when the
             defendant has exclusive knowledge of material facts not known or
22           reasonably accessible to the plaintiff; (3) when the defendant
             actively conceals a material fact from the plaintiff; [or] (4) when the
23           defendant makes partial representations that are misleading because
             some other material fact has not been disclosed.
24
     Dkt. No. 27 at 14 (quoting *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011)).[3] Plaintiff
25

26   _____
     [3] The parties dispute whether an omission standing alone can be the basis for a FAL claim. Dkt.
27   No. 17 at 10-11; Dkt. No. 27 at 13. The court finds that the parties have not sufficiently developed
     this dispute in their motion papers. The court need not rule on this dispute at present because
28
                                          9
     5:15-cv-05808-RMW
     ORDER GRANTING MOTION TO DISMISS
     RS

United States District Court
Northern District of California

1   does not allege a fiduciary relationship with Apple but contends that the three other circumstances

2   listed above apply in this case. Dkt. No. 27 at 14. Each of these circumstances requires the

3   existence of a material fact.

4        The problem with plaintiff's position is that in the product defect context, "for [an]

5   omission to be material, the failure [to disclose] must [still] pose safety concerns." *Wilson v.*

6   *Hewlett-Packard Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012) (citation omitted). As Apple points out,

7   "California federal courts have generally interpreted *Daugherty* as holding that '[a] manufacturer's

8   duty to consumers is limited to its warranty obligations absent either an affirmative

9   misrepresentation or a safety issue.'" *Id.* at 1141 (citation omitted). Plaintiff's opposition brief

10  does not address *Wilson* or otherwise dispute that in the product defect context, plaintiff was

11  required to plead facts supporting a breach of warranty or a safety issue.[4] Nor does plaintiff

12  dispute that the complaint makes no mention of a warranty claim or a safety concern. Thus, the

13  court need not reach the remaining prongs of the *Collins* test because plaintiff has not adequately

14  alleged that the information Apple failed to disclose was material.

15       While the court is concerned that plaintiff may not be able to plead the existence of a

16  safety issue arising from the alleged Defect, the court will nevertheless allow plaintiff a chance to

17  amend his omission claims.

18       **E.      Remaining UCL Claims**

19       California's UCL provides a cause of action for business practices that are (1) unlawful,

20  (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. While the analysis above addresses

21  plaintiff's claims under the "fraudulent" prong of the UCL, Apple also argues that the complaint

22

23  _____

24  plaintiff contends that "this case does not involve omissions alone," Dkt. No. 27 at 13, and
    because the court dismisses plaintiff's FAL claims on other grounds.
    [4] The cases plaintiff cites in support of his arguments on omissions are distinguishable because

25  they involved alleged safety concerns. *See* Dkt. No. 27 at 15 (citing *Johnson v. Harley-Davidson
    Motor Co. Grp., LLC*, 285 F.R.D. 573 (E.D. Cal. 2012) (defective cooling system); *Falk v.*

26  *General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) (defective speedometers); *In re
    MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014) (defective electronics

27  controlling backup cameras and defrosters); *Elias v. Hewlett-Packard Co.*, No. 12-cv-00421-LHK,
    2014 WL 493034 (N.D. Cal. Feb. 5, 2014) (defective power supply that could catch fire)).

28

5:15-cv-05808-RMW
ORDER GRANTING MOTION TO DISMISS
RS

United States District Court
Northern District of California

fails to satisfy the other prongs of the UCL.

### 1. Unlawful Prong

An action under the UCL's unlawful prong can "borrow[] violations of other laws and treat[] them as unlawful practices that the unfair competition law makes independently actionable." *Wilson*, 668 F.3d at 1145. Plaintiff's only argument is that "Apple's CLRA and FAL violations serve as predicate violations" under the unlawful prong. Dkt. No. 27 at 17. As described above, because the court finds that plaintiff's allegations are insufficient to state a claim under the CLRA or the FAL, plaintiff's claims under the UCL's unlawful prong must also be dismissed.

### 2. Unfair Prong

Apple also moves to dismiss plaintiff's claims under the UCL's unfair prong. The parties seem to agree that at least two possible tests govern what constitutes an "unfair" act under the UCL. First, some courts have held that the alleged unfairness "must 'be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Donohue*, 871 F. Supp. 2d at 927 (quoting *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal. 4th 163, 186 (1999)). Second, some courts have applied a balancing test that prohibits conduct that is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Id.* at 927-28 (quoting *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)).

Paragraph 63 of the complaint is the only portion of the complaint plaintiff cites in support of the argument that plaintiff has adequately alleged unfair competition.[5] That paragraph alleges:

> 63. Apple has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint offend established ***public policy supporting truth in advertising*** to consumers. Defendant's ***conduct is immoral, unethical, oppressive, unscrupulous, and injurious*** to consumers. The harm that these acts and practices cause to consumers greatly outweighs any benefits associated with them. Apple's conduct also impairs competition within the market for smart phones. Because Apple never disclosed the Defect, Plaintiff Palmer and Class members did not make fully informed decisions about the kind of smart phones to purchase or

---

[5] *See* Dkt. No. 27 at 18.

5:15-cv-05808-RMW
ORDER GRANTING MOTION TO DISMISS
RS

*United States District Court*
*Northern District of California*

> the price to pay for such products. Plaintiff and the Class did not know that the iPhone 5 came with a hidden monthly surcharge in the form of increased data charges on their phone bills due to the Defect.

Compl. ¶ 63 (emphasis added). While plaintiff alleges that there is a public policy in support of truth in advertising, plaintiff fails to identify which constitutional, regulatory, or statutory provision to which the alleged violation is tethered. Moreover, while plaintiff asserts that Apple's conduct is "immoral, unethical, oppressive, unscrupulous, and injurious," the court need not accept as true or "allegations that are merely conclusory." *Gilead*, 536 F.3d at 1055. Without additional allegations of wrongdoing, it is hard to see how Apple's failure to disclose the details of how the iPhone 5 switched off its Wi-Fi capability to improve battery life was "immoral, unethical, oppressive, or unscrupulous." Accordingly, the court finds that plaintiff has failed to state a claim under the unfair prong of the UCL.

## III.    ORDER

For the foregoing reasons, the court GRANTS defendant's motion to dismiss with leave to amend. By May 16, 2016, plaintiff shall submit an amended complaint that corrects the deficiencies identified in this order. A case management conference will be held on Friday, June 10, 2016 at 10:30 a.m. A joint case management statement is due one week in advance of the conference.

**IT IS SO ORDERED.**

Dated: April 15, 2016

_____
Ronald M. Whyte
United States District Judge

5:15-cv-05808-RMW
ORDER GRANTING MOTION TO DISMISS
RS